**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TERRELL WYNN, | ) | CASE NO. 3:21-CV-02405-JG |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN DOUGLAS FENDER, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant, | ) | |

**I.  Introduction**

Petitioner, Terrell Wynn, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Wynn is an Ohio prisoner who is currently serving an aggregate 40-year prison term for four counts of rape. Wynn asserts three grounds for relief. (ECF No. 1). Respondent, Warden Douglas Fender, filed a return of writ on September 29, 2022. (ECF No. 15). Wynn filed a traverse on November 30, 2022. (ECF No. 18). On December 13, 2022, Respondent filed a reply to the traverse. (ECF No. 19).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Wynn's petition and other case-dispositive motions. Because Wynn has presented only procedurally defaulted and/or not cognizable claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

**II.  Facts and Procedural History**

    **A.  Background**

1

The Ohio Court of Appeals for the Sixth Appellate District set forth the following facts[1] and procedural history on Wynn's direct appeal:

> {¶ 2} On July 13, 2018, the Lucas County Grand Jury indicted appellant on four counts of rape in violation of R.C. 2907.02(A)(2) and (B), felonies of the first degree. Each of the counts pertained to a different incident:
>
> > Count One alleged that on or around April 15, 2018, appellant raped D.J.
> >
> > Count Two alleged that on or around May 11, 2018, appellant raped S.W.
> >
> > Count Three alleged that on or around May 30, 2018, appellant raped S.M.
> >
> > Count Four alleged that on or around June 16, 2018, appellant raped H.C.
>
> {¶ 3} The matter proceeded to a five-day jury trial, commencing on November 26, 2018. The following evidence was presented at the trial.
>
> {¶ 4} D.J. testified that on April 14, 2018, she was earning extra money as an escort, advertising on the website "Skip the Games." Through the website, she met a person named "Tape," later identified as appellant. She agreed to meet appellant the next day for an "oral car date," for which she would charge $60. The two exchanged text messages, and Tape picked her up in a "mini foreign gray SUV" with a Michigan license plate. They then drove to a location behind a party store, where D.J. performed oral sex on appellant. Appellant never paid D.J. the agreed upon $60.
>
> {¶ 5} After the oral sex, appellant drove D.J. to a car wash, and parked in one of the bays. D.J. testified that when she tried to leave, appellant showed her a gun in the glove box and told her that she was not going anywhere until he was finished with her. Appellant then ordered D.J. into the back seat. D.J. described that appellant had her head pinned to the floor and that he penetrated her very roughly. She told him to stop, but he did not. Appellant finished, and then a few minutes later penetrated her for a second time. D.J. stated that appellant had his knee in her chest, and was very forceful and aggressive. D.J. recounted that appellant kept asking her how it felt to be with an animal. Crying and upset, D.J. again told appellant no, but he did not stop. After a few more minutes, appellant penetrated D.J. for a third time, this time anally.
>
> {¶ 6} When appellant was finished, he told D.J. to climb out of the car window. Appellant then offered D.J. her purse and shoes, holding them out on one side of the car until she approached, then moving them to the other side of the car and making her walk around to get them. D.J. stated that appellant repeated this about

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

2

four times. Appellant then threw the purse and shoes out of the window and drove away. D.J. ran to the party store and the police were called.

{¶ 7} After the police were called, D.J. went to St. Vincent's Hospital where a rape kit was performed. The SANE nurse who examined D.J. at St. Vincent's Hospital testified that D.J. was very tearful during the examination. As part of the examination, the nurse found trauma at the 12:00 position of D.J.'s anal opening. A subsequent DNA analysis confirmed that appellant's DNA was present in D.J.'s vaginal area.

{¶ 8} Finally, D.J. testified that she has never accused anyone of rape prior to appellant. Further, D.J. testified that she did not know the other victims, S.W., H.C., or S.M.

{¶ 9} On cross-examination, D.J. admitted that she originally told the police and hospital staff that she met appellant at a gas station. She explained that she did not want to disclose that she was working as an escort. D.J. also acknowledged that while she told police and the SANE nurse that appellant had choked her, she did not use those particular words during her testimony. Further, the SANE nursed did not discover any visible signs of injury on D.J.'s neck.

{¶ 10} The state next called S.W. as a witness. S.W. testified that she met appellant on May 11, 2018, in response to an advertisement that she placed on the website "Skip the Games." S.W. agreed to meet appellant for a car date. When she met him, appellant was driving a silver hatchback. After driving around for a little bit, appellant parked, and the two started going back and forth about the money.

{¶ 11} S.W. testified that the next thing she knew, appellant grabbed her by the neck and pulled her into the back of the car. S.W. said "Don't kill me. Don't kill me," and appellant replied that he would not kill her. S.W. testified that she then just gave up and let him have it however he wanted because she was stuck and if she knew that she was not going to die there was no point fighting it. At first, appellant forced S.W. to perform oral sex, then he moved to penetrating her. Appellant then told S.W. to get on top of him, but she told him that her legs hurt. Appellant threatened that if S.W. did not do what he wanted, he was going to take her to five other people who would do the same thing to her.

{¶ 12} While appellant was penetrating S.W. from behind, the car door opened and S.W. tried to get away. Appellant then grabbed her by the neck, and started squeezing it extremely hard. When appellant finished, he said, "[I]f you want to run so fast, run," and then pushed S.W. out of the car. S.W. then demanded her phone, but appellant jumped in the front seat of the car and drove away.

{¶ 13} S.W. ran to her brother's house, which was nearby, and her brother took her home. Once home, S.W.'s husband and brother convinced her to call the police. S.W. testified that the police wanted her to go to Toledo Hospital to have a rape kit performed, but they would not wait there for her to give her a ride back home. Not wanting to walk home from the hospital at 2:00 a.m., S.W. refused. On cross-examination, S.W. also explained that she initially did not believe that they would

3

find any of appellant's DNA because he used a condom, and also because she had been with five other men earlier that day.

{¶ 14} Finally, S.W. testified that aside from the incident with appellant, she has never filed a police report accusing someone of rape. In addition, S.W. testified that she did not know D.J., S.M., or H.C.

{¶ 15} H.C. testified next. H.C. also testified that she met appellant in response to her advertisement on the website "Skip the Games." H.C. agreed for appellant to pick her up from her house, and he arrived in what she described as a silver hatchback. H.C. testified that after driving around for a little bit, appellant stopped the car, and opened the back tailgate. H.C. described that after they both took a drink of vodka in the back of the car, she brought up the issue of money, and that is when appellant began to "grab [her] up" and tried to rape her. H.C. tried to run, but appellant held her down. She said that she could not breathe, and appellant replied "that was the point." H.C. told him no, but appellant held her down and penetrated her. When he finished, appellant drove away and threw H.C.'s purse and phone out of the car. H.C. chased after him screaming. Once she retrieved her phone she called the police.

{¶ 16} H.C. then went to the hospital to have a rape kit performed, but ultimately left because the hospital staff was treating her badly. However, H.C. returned a couple of days later and had the kit performed. As part of the examination, several photographs were taken depicting cuts and bruises to H.C.'s body, arms, and hands. Notably, the SANE nurse testified that H.C. denied that she was choked, and there was no physical evidence of H.C. having been choked. Further, DNA testing was performed, and while the testing indicated the presence of male DNA, it was unsuitable for comparison.

{¶ 17} Finally, H.C. testified that she has never before filed a police report accusing someone of rape. Further, she testified that she did not know D.J., S.W., or S.M.

{¶ 18} The next witness to testify for the state was S.M. S.M. testified that on May 30, 2018, she agreed to meet a man named "Mark" that she met on a dating website called "Fast Meet." S.M. later identified "Mark" as appellant. Unlike the other victims, S.M. testified that she was not an escort, and that she did not offer sexual services in exchange for money. Appellant was supposed to pick up S.M. and take her for coffee. However, when appellant picked her up in his silver small SUV, he drove her to a place with loading docks.

{¶ 19} S.M. testified that appellant physically forced her into the backseat of the car, explaining that he hit her head several times with his fist. S.M. tried to fight back, but appellant was holding her arm. During the scuffle, S.M. hit her head against the side of the car. S.M. testified that she realized the more aggressive that she got, the more aggressive appellant became. So, S.M. went into "survival mode," and just let appellant have what he wanted. S.M. described that appellant forced her to have oral sex with him, and when she said no, he would hit her in the head. Appellant then vaginally penetrated S.M. When he was done, appellant threw S.M. out of the car and drove away.

4

{¶ 20} S.M. ran to a nearby church and called the police. S.M. then went to St. Vincent's Hospital to have a rape kit performed. Appellant's DNA was found in vaginal samples taken from S.M. In addition, pictures taken during the examination showed a scratch on S.M.'s wrist, a large lump on the back of her head, and bruises that were beginning to form on her arms.

{¶ 21} Finally, S.M. testified that, other than appellant, she has never accused someone of rape. Further, she testified that she did not know D.J., S.W., or H.C.

{¶ 22} On cross-examination, S.M. admitted that she told the police that she voluntarily got into the backseat of the car. However, on redirect, S.M. testified that she got into the backseat because appellant told her that he was stopping to pick up a friend.

{¶ 23} The final witness to testify was Toledo Police Detective Michael Talton. Talton testified that H.C. provided a phone number for the suspect, which public records revealed was attached to appellant. A later search of appellant's cell phone revealed the text messages between him and the victims on the dates that the victims filed their initial police reports. Talton also testified that a photo array was administered to all of the victims, and all of the victims separately identified appellant. Further, Talton discovered that a small silver SUV was registered to appellant's mother. In addition, Talton testified that appellant's DNA was connected to the rape kits performed on D.J. and S.M.

{¶ 24} Thereafter, the state played Talton's recorded interview with appellant. In the interview, appellant believed that the women fabricated their allegations against him because he did not pay them. Appellant then explained that this happened to him one time before in Wayne, Michigan, where he met a woman and had consensual sex, after which the woman demanded money and appellant refused to pay. Appellant stated that in all four of the current occasions, he picked up the women, the women did not ask him about money at the beginning, they had consensual sex, and then they asked him for money afterwards, and he refused to pay.

{¶ 25} Following Talton's testimony, the state rested. Appellant then moved for an acquittal pursuant to Crim.R. 29(A), which was denied. Appellant then rested without calling any witnesses. After closing arguments and jury instructions, the jury deliberated and returned with a verdict of guilty as to all four counts.

{¶ 26} Sentencing was held on December 13, 2018. The trial court ordered appellant to serve ten years in prison on each count, with those terms to be served consecutively to one another, for a total prison term of 40 years. In ordering the terms to be served consecutively, the trial court found that consecutive sentences were necessary to protect the public from future crimes, as well as to punish appellant. In addition, the court found that consecutive sentences were not disproportionate to the seriousness of appellant's conduct, or to the danger that appellant posed to the community. Finally, the court found that the harm caused was so great and unusual that a single prison term for any of the offenses committed as part of the course of conduct would not adequately reflect the seriousness of

appellant's conduct. In support of its findings, the court noted the "chilling" fact that four separate, unrelated women each recounted a similar instance of appellant forcefully and aggressively raping them, all of which occurred over the course of only a couple of months.

*State v. Wynn*, 2020-Ohio-3550, ¶¶ 2-26 (6th Dist. Ohio June 30, 2020).

### B. Direct Appeal

On appeal, Wynn raised three assignments of error:

1. Appellant's convictions are against the manifest weight of the evidence.

2. The trial court erred in permitting the admission of Evid.R. 404(B) evidence taken from appellant's videotaped interview with a detective.

3. Appellant's sentence is clearly and convincingly not supported by the record

(ECF No. 15-1, Ex. 7 at PageID #: 196). After obtaining leave of court, Wynn supplemented his first assignment of error. (*Id.,* Ex. 10 at PageID #: 223). The State of Ohio filed an Appellee's brief (*id.,* Ex. 11), and Wynn replied in support of his appeal (*id.,* Ex. 12). On June 30, 2020, the state appellate court overruled Wynn's error assignments and affirmed his convictions and sentences. *Wynn*, 2020-Ohio-3550, ¶ 50.

### C. Delayed Appeal to the Ohio Supreme Court

On October 2, 2020, Wynn filed an untimely pro se appeal notice and motion for leave to file a delayed appeal. (ECF No. 15-1, Exs. 14, 15). The Ohio Supreme Court granted Wynn leave to file a delayed appeal and Wynn raised these propositions of law in his memorandum in support of jurisdiction:

1. Appellant's convictions are against the manifest weight of evidence, violating his right to due process of law and the standard set forth in R.C.2907.06(B) must apply to any and all rape accusations.

6

2. The Appellant's right of Equal Protection of Law was violated when the trial court erred in permitting the admission of Evid.R. 404(B), evidence taken from the Appellant's interview.

3. Appellant's Due Process of Law and Equal Protection of Law rights were violated as the Appellant's sentence is clearly and convincingly not supported by the record.

4. Appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness for failing to object to the State's joinder of multiple victims into a single trial.

5. The Appellant's Due Process and Effective Assistance of Counsel rights were violated under the Sixth and Fourteenth Amendment of the U.S. Constitution when trial counsel failed to investigate in petit jury array.

6. The Appellant's right to Due Process of Law under the Fourteenth Amendment of the U.S. Constitution was violated because of Prosecutorial Misconduct.

7. Appellant's Fourth Amendment Right to illegal search and seizure was violated when the detective in this case made false statements to obtain a search warrant.

8. Before trial, the court tried to scare Defendant/Appellant into accepting the State's plea offer by repeatedly stressing the maximum number of years to which he could be sentenced if he exercised his Constitutionally-protected right to a trial by jury. "The court: The maximum sentence on each of those cases is an 11-year penitentiary sentence plus the fines in those matters, and the fines can total on each of those cases, $20,000. So you would be looking at a maximum of $80,000 in fines. The plea offer is if you plead to all four charges, the State would put a sentencing recommendation on, which is a cap of 30 years, no more than 30 years. So that is 14 years less that what the maximum is." (Tr. 5)

9. The State prosecutor committed misconduct during closing arguments when he said: "See, but now the Defendant has got a problem because that explanation makes sense for one woman. Maybe you could stretch it, say is makes sense for two. But four? Four times? Over and over? It starts to sound like nonsense." (Tr. 631-632)

(*Id.*, Ex. 17). The State waived a response (*id.*, Ex. 18), and on December 29, 2020, the Ohio Supreme Court declined to accept jurisdiction of Wynn's appeal pursuant to S. Ct. Prac. R.

7

7.08(B)(4). *State v. Wynn*, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1152. (ECF No. 15-1, Ex. 19).

### III. Ohio App. R. 26(B) Application to Reopen

Wynn timely filed a petition to reopen his appeal pursuant to Ohio App. R. 26(B). (ECF No. 15-1, Ex. 20). Wynn argued that his appellate counsel was ineffective for failing to raise the following claims on direct appeal:

> 1. The Appellant's Due Process and Effective Assistance of Counsel Rights were violated under the Sixth and Fourteenth Amendment of the United States Constitution when trial counsel failed to investigate in petit jury array.
>
> 2. The Appellant's right to Due Process of Law under the Fourteenth Amendment of the United States Constitution was violated because of Prosecutorial Misconduct.
>
> 3. Appellant's Fourth Amendment Right to illegal search and seizure was violated when the Detective in this case made false statements to obtain a search warrant.

(ECF No. 15-1, Ex. 20). Wynn then received leave to amend his application to assert that his appellate counsel was further ineffective for failing to raise the following issues on direct appeal:

> 4. Before trial, the court tried to scare Defendant/Appellant into accepting the State's plea offer by repeatedly stressing the maximum number of years to which he could be sentenced if he exercised his Constitutionally-protected right to a trial by jury.
>
>> "The court: The maximum sentence on each of those cases is an 11-year penitentiary sentence plus the fines in those matters, and the fines can total on each of those cases, $20,000. So you would be looking at a maximum of $80,000 in fines. The plea offer is if you plead to all four charges, the State would put a sentencing recommendation on, which is a cap of 30 years, no more than 30 years. So that is 14 years less that what the maximum is." (Tr. 5)
>
> 5. The State prosecutor committed misconduct during closing arguments when he said: "See, but now the Defendant has got a problem because that explanation makes sense for one woman. Maybe you could stretch it, say is makes sense for two. But four? Four times? Over and over? It starts to sound like nonsense." (Tr. 631- 632)

8

> 6. The state prosecutor committed misconduct during closing arguments when he said: (Tr. 636) "Destiny Jones didn't tell the police she was an escort. She didn't tell the hospital that night. Why? Because she was embarrassed. She was humiliated. She knew that her fiancé would not approve. Ultimately, he offered her an ultimatum. You stop doing that escorting or we're through."

(ECF No. 15-1, Ex. 21). The State filed a response in opposition. (*Id.*, Ex. 22). Wynn replied. (*Id.*, Ex. 23). On December 11, 2020, the state appellate court denied the application to reopen. (*Id.*, Ex. 24).

Wynn did not timely file a collateral appeal in the Ohio Supreme Court and his filing deadline expired January 25, 2021. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i); Ohio S. Ct. Prac. R. 3.03(A)(1).

## IV.  Federal Habeas Corpus Petition

On December 26, 2021, though counsel, Wynn filed a 28 U.S.C. §2254 habeas petition and raised these grounds for relief:

> GROUND ONE: Petitioner suffered a deprivation of the right to due process and a fair trial under the Fifth and Fourteenth Amendments due to Prosecutorial Misconduct.
>
> GROUND TWO: Petitioner's forty year prison term violates his substantive due process rights found in the Fifth and Fourteenth Amendments and is cruel and unusual punishment under the Eighth Amendment and also was vindictive in violation of his constitutional right to trial.
>
> GROUND THREE: The trial court's "course of conduct" finding is contrary to Ohio Law but Petitioner's Appellate Counsel Failed to Fully litigate the meritorious issue.

(ECF No. 1 at 3-5).

## V.  Law and Analysis

### A.  Ground One

9

In Ground One, Wynn asserts that he "suffered a deprivation of the right to due process and a fair trial under the Fifth and Fourteenth Amendments due to Prosecutorial Misconduct." (ECF No. 1 at 3). Specifically, Wynn states that the prosecutor: used improper prior bad act evidence of an unindicted rape allegation; misled the jury by asserting that Wynn had called the four alleged-victims "whores;" and misled the jury by stating a detective was "familiar" with the "escort business," despite the detective having testified that he was "not familiar" with the business. (*Id.*). Respondent argues that Ground One is procedurally defaulted. This Court agrees with the Respondent.

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time

10

of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

Wynn did not raise a federal constitutional due process prosecutorial misconduct claim in his direct appeal to the state appellate court. (ECF No. 15-1, Ex. 7, 10). Instead, Wynn raised the issue for the first time in his memorandum in support of jurisdiction filed with the Ohio Supreme Court. (*Id*. at Ex. 17). "[U]nder Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court." *Reed v. Jenkins*, Case No. 3:15-cv-00620, 2016 WL 6311235, at *6 (N.D. Ohio June 22, 2016) (citations omitted), *report and recommendation adopted*, 2016 WL 6393350 (N.D. Ohio Oct. 27, 2016). As the Sixth Circuit has explained, "'The Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals.'" *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985) (quoting *Fornash v. Marshall*, 686 F.2d 1179, 1185 n.7 (6th Cir. 1982) (additional internal citations omitted). When a claim is discoverable from the trial court record, failing to raise the claim on direct appeal is a well-established procedural default. *See Hill v. Mitchell*, 842 F.3d 910 (6th Cir. 2016); *Moore v. Mitchell*, 708 F.3d 760, 778 (6th Cir. 2013). Wynn could have, but did not, raise his prosecutorial misconduct claim on direct appeal. In his application to reopen his appeal, Wynn argued that his appellate counsel was ineffective for failing to raise an issue of prosecutorial conduct in his direct appeal. However, Ohio App. R. 26(B)

11

petitions only preserve the issue of ineffective assistance of appellate counsel, *not* the underlying issue. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[A] Rule 26(B) application 'based on ineffective assistance cannot function to preserve' the underlying substantive claim" for federal habeas review.) (citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)); *see also, Glenn v. Bobby*, No. 1:13 CV 128, 2013 WL 3421888, * 10 (N.D. Ohio July 8, 2013) ("When an appellant claims that appellate counsel was ineffective because he failed to raise certain claims, that does not fairly present the underlying substantive claims that appellate counsel failed to raise to the state courts.").

Accordingly, Ground One is procedurally defaulted.

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

12

Wynn does not argue cause for his procedural default[2] or present any new evidence demonstrating that he is actually innocent. (*See* ECF No. 18).

Accordingly, Ground One should be dismissed as procedurally defaulted.

**B. Ground Two**

In Ground Two, Wynn asserts that his "forty year prison term violates his substantive due process rights found in the Fifth and Fourteenth Amendments and is cruel and unusual punishment under the Eighth Amendment and also was vindictive in violation of his constitutional right to trial." (ECF No. 3 at 4). Respondent argues that the Court must dismiss Ground Two as it is procedurally defaulted. (ECF No. 15 at 38). Specifically, Respondent argues that Wynn failed to assert any federal Constitutional argument regarding his sentence on direct appeal and, instead, challenged only that his sentence violated Ohio's sentencing statutes. (*Id*. at 39). Wynn does not disagree. (*See* ECF No.18 at 8-9 ("this Constitution[al] issue has been procedurally defaulted to do the failure to preserve the claim with both Ohio's intermediate court and the Ohio Supreme Court.")).

There is no dispute that Wynn did not fairly present in the state court a claim that his sentence violated the Fifth, Eighth, or Fourteenth Amendments. (*See* ECF No. 18). Accordingly, Wynn procedurally defaulted his claims that the forty-year prison term violated his due process rights and constituted cruel and unusual punishment. Wynn did not argue cause and prejudice to

---

[2] Wynn cannot rely on his claim of ineffective assistance of appellate counsel raised in his Ohio App. R. 26(B) application as "cause" for his procedural default as he failed to appeal the appellate court's decision to the Ohio Supreme Court and the time for doing so has passed. See Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i); Ohio S. Ct. Prac. R. 3.03(A)(1). Accordingly, his ineffective assistance of appellate counsel claim is itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Williams v. Lazaroff*, 648 F. App'x 548, 554 (6th Cir. 2016).

13

excuse his procedural default or present any new evidence demonstrating that he is actually innocent; thus, his default should not be excused. *Williams*, 460 F.3d at 808.

Ground Two should be dismissed as procedurally defaulted.

### C.     Ground Three

In Ground Three, Wynn states that "[t]he trial court's 'course of conduct' finding is contrary to Ohio Law but Petitioner's Appellate Counsel Failed to Fully litigate the meritorious issue." (ECF No. 1 at 5). Respondent argues that Ground Three is not cognizable to the extent it challenges the trial court's discretion in analyzing a matter of state law and that any federal constitutional issue is procedurally defaulted. (ECF No. 15 at 48-49). In his traverse Wynn agrees that "federal courts rarely issue habeas relief on state law questions" and clarifies that Ground Three "asserts an IAAC Sixth Amendment deprivation due to the failure to file a certified conflict motion of the direct appeal opinion." (ECF No. 18 at 13). Wynn does not rely on any controlling federal law supporting his claim that his appellate counsel was ineffective. (*See id*. (stating that he "cannot find a controlling case, perhaps this is an argument of first impression, but counsel believes filing a motion for a certified conflict pursuant to Ohio Appellate Rule 25 is part of the 'direct appeal' and not part of a tertiary litigation in the Ohio Supreme Court.")).

First, to the extent that Ground Three raises a challenge to the state appellate court's decision upholding his sentence based on state law analysis, Ground Three is not cognizable. Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007)

14

(citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

Wynn states that "[w]hen a state court arbitrarily disregards its own procedures to unlawfully punish a criminal defendant, it could constitute a due process violation cognizable in federal habeas." (ECF No. 18 at 11 (citing *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998), citing inter alia *Howard v. Grinage*, 82 F.3d 1343 (6$^\text{th}$ Cir. 1996)). Wynn asserts that the appellate court erred by not remanding the matter for resentencing after finding that the trial court had failed to include the "course of conduct" language in the sentencing entry in violation of "controlling precedent from the Ohio Supreme Court." (*Id*. at 10[3]). At best, Wynn proposes that his federal due process rights were violated because the state appellate court did not follow Ohio law. But such a proposition misunderstands the constraints of habeas review. Importantly, a state court's failure to follow its own state law does not necessarily mean that a defendant has been denied a fair trial. *Rivera v. Illinois*, 556 U.S. 148, 160 (2009) ("[E]rrors of state law do not automatically become violations of due process."). Accordingly, to the extent that Wynn asserts that the alleged misapplication of Ohio law itself resulted in him being denied due process, such a claim is not

---

[3] Wynn does not include the Ohio Supreme Court precedent, but rather cites to his state appellate brief.

15

cognizable. *See Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) ("We agree with the State that Curtis is impermissibly attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of Illinois law. We may not review state-court interpretations of state law.").

Next, the Court turns to what appears to be Wynn's intended ground for relief: that his appellate counsel was ineffective for failing to file a motion to certify a conflict after the state appellate court upheld Wynn's sentence. (ECF No. 18 at 13). Respondent argues that Wynn's ineffective assistance of appellate counsel claim is procedurally defaulted. (ECF No. 15 at 49). This Court agrees with the Respondent.

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). "In Ohio, claims of ineffective assistance of appellate counsel are not cognizable in the normal course of post-conviction proceedings, and must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B)." *Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012) (emphasis added).

There is no dispute that Wynn failed to raise this ineffective assistance of appellate counsel claim for review in the Ohio courts. Although Wynn filed a petition to reopen his appeal pursuant to Ohio App. R. 26(B), his grounds to reopen did not include that his appellate counsel was ineffective for failing to move to certify a conflict. (*See* ECF No. 15-1, Exs. 20, 21). Wynn never

raised the ineffective assistance of appellate council claim in Ground Three for review in the state courts and can no longer do so. *See* Ohio App. R. 26(B) (application for reopening shall be filed within 90 days from the appellate judgment). *Prieto v. Schweitzer*, No. 4:18CV00222, 2019 WL 2605639, at *8 (N.D. Ohio May 31, 2019), *report and recommendation adopted*, No. 4:18CV222, 2021 WL 147049 (N.D. Ohio Jan. 15, 2021). Accordingly, Ground Three is procedurally defaulted.

Wynn cannot rely on ineffective assistance of appellate counsel as cause for his procedural default as Wynn has no right to counsel following his direct appeal. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (The right to counsel extends to the first appeal of right and no further.). Under the rule of *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546 (1991), attorney error in proceedings wherein there is no right to counsel—such as in the filing of a motion for a discretionary appeal with the Ohio Supreme Court—cannot serve as cause for a procedural default. *See Tomlinson v. Bradshaw*, No. 5:13-cv-1808, 2015 WL 106060, at *3 (N.D. Ohio Jan. 7, 2015) (attorney error in the filing of a discretionary appeal to the Ohio Supreme Court where there is no Sixth Amendment right to counsel cannot constitute cause for a procedural default) (citation omitted).[4] Wynn did not argue cause and prejudice to excuse his procedural default or present any new evidence demonstrating that he is actually innocent; thus, his default should not be excused. *Williams*, 460 F.3d at 808.

Accordingly, Ground Three should be dismissed as it is procedurally defaulted.

**VI.     Certificate of Appealability**

---

[4] Wynn argues that the motion to certify counsel should be viewed as part of his direct appeal, but admittedly he lacks any support for this suggestion. (*See* ECF No. 18 at 13 ("Counsel cannot find a controlling case, perhaps this is an argument of first impression, but counsel believes filing a motion for a certified conflict pursuant to Ohio Appellate Rule 25 is part of the 'direct appeal' and not part of a tertiary litigation in the Ohio Supreme Court.")).

### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B. Analysis

Wynn's grounds for relief are procedurally defaulted and/or not cognizable. If the Court accepts the foregoing recommendation, then Wynn has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VII. Recommendation

Wynn has presented only procedurally defaulted and not cognizable claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: April 18, 2024       *s/Carmen E. Henderson*
                            Carmen E. Henderson
                            United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).